## Bredin *against* Agnew.

A and B purchased an estate which was encumbered by liens to the whole amount of the purchase money: each entered into a separate covenant to the other to pay one-half of these liens, specifying which each was to pay: B failed to pay, by reason of which the property was sold by the sheriff, and purchased by A. *Held*, that the covenants were mutual and independent, and that A's right of action against B was not affected by the fact that he had not paid the entire amount which he had covenanted to pay; nor by the fact that B had not covenanted to pay the whole amount of the lien upon which the property was sold, a part of it having been excluded by mistake in the calculation: and that the measure of damages in such case was the difference between what A paid for the whole property, and what he and his co-vendee had agreed to give for it.

**ERROR** to the Special Court of Common Pleas of *Cumberland* county.

This was an action of covenant by John Agnew against Ann Bredin, administratrix of James Bredin, deceased.

In 1831, the plaintiff and defendant's intestate purchased a mill and lot of ground from John D. Mahon, Esq. for $13,249.16: at the time of the purchase the property was encumbered by mortgages and judgments to the whole amount of the purchase money which the vendees agreed to pay; and what liens each was to pay were specifically set out in separate covenants which each gave to the other. That executed by Bredin to Agnew, and upon which this suit was brought, was as follows:—

" The following is a statement and exhibit of J. Bredin's share or proportional part of the purchase money of the mill and lots purchased from John D. Mahon:

| | |
|---|---:|
| Entire amount of purchase money | $13,249.16 |
| J. Bredin's part of the same | 6,624.28 |
| 1. Mortgage, J. D. Mahon to Z. Collins | 3,120.00 |
| 2. One-half of my share of debt borrowed from bank | 756.64 |
| Balance of mortgage to M'Clure, which will remain after deducting the part to be paid by Agnew | 2,747.94 |
| | $6,624.58 |

*Carlisle, July 26th,* 1831.

The above stated sums, as they are respectively stated and set

[Bredin v. Agnew.]

forth, I hereby engage, stipulate, and bind myself unto John Agnew, to pay in full, to the extent above set forth on the amounts as above stated; that is to say, I engage and bind myself to pay to Z. Collins his mortgage, debt and interest; also to John M'Clure $2747.94, being the balance of debt and interest due on the mortgage executed by John D. Mahon to him, after deducting the sum of $1691.95, agreed to be paid by John Agnew to the said John M'Clure on account of said mortgage: these sums together amount to my share or part of the purchase money. The above sums to be paid with interest to the parties as hereby entitled, within two years from the date hereof. This stipulation is made in consequence of a similar stipulation made by John Agnew for his one-half part of the purchase money."

JAMES BREDIN, [L. S.]

At the same time John Agnew entered into a similar covenant to James Bredin that he would pay liens to the same amount. Bredin failed to pay any part of the liens, in consequence of which Collins's mortgage was sued, judgment obtained, and the property sold by the sheriff to Robert M'Coy, Esq., who purchased for John Agnew for the sum of $7500.

At the time of the sheriff's sale, Agnew had paid all the liens he had covenanted to pay, except about $350 of the M'Clure mortgage. It also appeared that at the time the covenants were entered into, the mortgage of Collins amounted to $84.50 more than the parties supposed and than Bredin agreed to pay.

The plaintiff claimed to recover the difference in amount between what the whole property cost him and that which he and Bredin agreed to pay for it, and exhibited a calculation upon that principle.

The defendant requested the court to charge the jury "that the stipulation from Bredin to Agnew, and that from Agnew to Bredin of the 26th of July 1831, are concurrent covenants, and that if at the time of the sheriff's sale, John Agnew had not complied with his stipulation to Bredin, but had left a portion of the money that he was to pay, unpaid, that in law Agnew cannot recover from Bredin on his covenant to Agnew, by reason of said sheriff's sale. That if the jury believe that at the time of the sheriff's sale there was a portion of the debt secured by the Zaccheus Collins's mortgage not embraced in the covenant from Bredin to Agnew, that the plaintiff cannot recover in this suit."

PARSONS, President, charged the jury that the measure of damages claimed by the plaintiff was the true one; and answered both the defendant's points in the negative.

*Gallaher* and *Biddle*, for plaintiff in error, argued that the separate covenants executed by the parties formed but one transaction; one was the consideration of the other: they were therefore

mutual and dependent covenants, and the failure of the plaintiff to show performance of his own was a bar to his recovery against the defendant. *Platt on Covts.* 70, 81; 1 *Salk.* 113, 171; *Doug.* 688; 1 *Saund.* 319, *note.*

*Graham* and *Watts*, contra, contended that the covenants were independent, and that the parties so intended them; that the right of action to either depended upon the fact, whether either had sustained damage by the failure of the other to perform. That the plaintiff was damnified by having to pay more for the property by reason of the sheriff's sale, was not doubted, and therefore he was entitled to recover the difference. If the plaintiff failed, to a small amount, to pay according to his covenant, it would have given a right of action to the defendant's intestate, only in the event of his having been damnified by it; and it would only be a defence in the same event and to the amount of the damnification; but would not go to defeat the plaintiff's action. *Platt on Covts.* 90; 2 *W. Black.* 1312; 1 *Black.* 273; 8 *Taunt.* 576; 6 *T. Rep.* 571.

The opinion of the Court was delivered by

GIBSON, C. J. — Whether covenants are dependent, concurrent, or mutual, depends on the intention of the parties, ascertained by the application of rules of interpretation to the context, from which alone it is to be extracted. Where money is to fall due subsequently to a day appointed for the act, which is the consideration of the contract, performance of the consideration is a condition precedent to a demand of the money, and the covenants are dependent. Where they go to the entire consideration on either side—as where a vendor covenants to convey, the vendee paying the purchase money—they are concurrent. But the case presented by the record is neither of these. It contains no stipulation, express or implied, for priority or concurrence of performance. The parties purchased an estate, burthened with liens to the extent of the purchase money, and reciprocally covenanted that each should pay his share of it, in ease of particular parts of the common burthen; and each relied on the engagement of the other. There was no stipulation that they should go hand in hand; but each had two years to do his part, moving at any pace he should think fit. Were not their covenants, then, mutual in their very nature? No advantage was to be gained by standing upon the order of their performance. As each payment, by whichsoever made, conduced as much to the benefit of the one party as the other, it was equally the interest of both to proceed as fast as possible; for while a single encumbrance was outstanding, the danger which there was of disturbance from it was mutual. On the contrary, if each had waited for the other to begin, the liens must, in any event, have been pressed to a sale. As it would have been subversive of the object, then, to insist on

[Bredin v. Agnew.]

the performance of mutual conditions, it is not to be presumed that the parties meant to create them. Besides, though writings *in pari materia* are parts of an entire contract, it is of weight, in relation to the question of intention, that each took the covenant of the other on a separate paper as an isolated security. It is plain that the covenants were intended to be mutual and independent; and it is unimportant, that when the property was eventually sold by the sheriff, the plaintiff himself had not done all he was bound to do to preserve it.

The measure of the damages to which he is entitled, is not what he paid for Bredin's part, but what he paid without an equivalent. *Primâ facie*, that would be the difference between what he was compelled to pay for Bredin's part, and the price he had given for his own; because the presumption is, that what he got by the sheriff's sale, was worth the price which had been affixed to it at the preceding purchase. If the presumption were unfounded, the fact might be shown by evidence, and then the proper amount of the damages would depend, as it must to some extent in any view, on the circumstances of the case. The measure proposed by the plaintiff's counsel, and adopted by the Judge, was the difference between what he was ultimately compelled to pay for the whole property, and what he and his co-vendee had agreed to give for it. But that contains the principle I have indicated; and the calculation based on it, is only another means to obtain the same result. On both points, therefore, the direction was a proper one.

Judgment affirmed.